UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **Tracy Lynn Grasley,**<br><br>                    **Plaintiff,**<br><br>v.<br><br>**WWBT, LLC,**<br>**Raycom Media, Inc., and**<br>**Gray Media Group, Inc.**<br><br><br>                    **Defendants.** | CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiff Tracy Lynn Grasley ("Plaintiff" or "Grasley") respectfully moves for judgment against Defendants WWBT, LLC, Raycom Media, Inc., and Gray Media Group, Inc. (collectively "Defendants"):

### Introduction

1. This is an action pursuant to the Age Discrimination in Employment Act ("ADEA) and Title VII of the Civil Rights Act ("Title VII") to correct and remedy the unlawful employment practices complained of herein.

2. Plaintiff was employed by Defendants when she experienced unlawful age discrimination and sex discrimination and was retaliated against in violation of the ADEA and Title VII, culminating in the termination of her employment and the denial of an ongoing independent contractor working relationship.

### Jurisdiction and Venue

3. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. §

1

216(b), and 42 U.S.C. § 2000e-5(f).

4. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3(B)(4) since the acts and omissions giving rise to this lawsuit have taken place in the Eastern District of Virginia.

5. Defendants are subject to personal jurisdiction in the Commonwealth of Virginia.

## Parties

6. Plaintiff is a resident of Virginia who was employed by Defendants. Plaintiff was an employee as defined by the ADEA and Title VII. Plaintiff is female and during the times relevant hereto was aged 50-51.

7. WWBT, LLC was a Virginia limited liability company, which had its principal office in Virginia.

8. Raycom Media, Inc. is a foreign corporation, authorized to do business in Virginia, which has its principal place of business in Georgia.

9. Gray Media Group, Inc. is a foreign corporation, authorized to do business in Virginia, which has its principal place of business in Georgia.

10. On information and belief, during Plaintiff's employment, WWBT, LLC was a wholly owned subsidiary of Raycom Media, Inc. and Defendants were Plaintiff's joint employer as defined by the ADEA and Title VII. On further information and belief, after Plaintiff's employment ended, Raycom Media, Inc. sold WWBT, LLC to Grey Media Group, Inc. in or about January 2019 and Grey Media Group, Inc. became a successor in interest to WWBT, LLC and Raycom Media, Inc.

## Factual Allegations

11. Plaintiff first began working for Defendants in April 2002. Plaintiff worked as the

on-air traffic reporter for NBC12, the NBC affiliate tv station in Richmond, Virginia that was owned and operated by Defendants.

12. Like most on-air talent, Plaintiff signed contracts for multi-year terms with Defendants. On or about March 23, 2015, Plaintiff signed yet another a 3-year employment contract with Defendants.

13. During her employment Plaintiff consistently met or exceeded the reasonable and objective criteria for her job. On February 27, 2016, Defendants' General Manager, Kym Grinnage, sent Plaintiff an emailing stating "you are the TRAFFIC STAR in this market and I am so glad that you are with NBC12!!." On or about April 1, 2016, Plaintiff received a performance evaluation from Defendants ranking her "above average."

14. On August 5, 2016, Plaintiff turned fifty years old. A few weeks later, she received a memo from the News Manager, Frank Jones, entitled "Disciplinary Action Record" of a "written warning." Plaintiff was purportedly written up for giving inaccurate information during traffic segments, however Plaintiff was simply accurately reporting information that had been inaccurately posted to the Virginia Department of Transportation ("VDOT") 511 information website. Plaintiff refused to sign the writing warning and Mr. Jones then acted as if the write-up was not a big deal, telling Plaintiff that she could throw away the write-up if she wanted to.

15. After the pretextual write-up, Mr. Jones continued to indicate a desire to push Plaintiff out of her role with Defendants. At one point, Mr. Jones told Plaintiff that her life had changed over the past couple of years and that she should "just stay at home with your husband." Plaintiff made clear to Mr. Jones that she loved her job and intended to stay with the station for a long time.

16. Nonetheless, Mr. Jones continued a pattern of falsely nitpicking Plaintiff's job

performance, including creating alleged performance issues such as: vague and subjective claims that Plaintiff communicated poorly; false and general allegations that Plaintiff displayed low energy (Plaintiff requested Mr. Jones provide her with specific examples or tapes, but he refused); factually incorrect claims that Plaintiff ignored directions; and unfair criticism (aimed solely at Plaintiff and not other reporters) that stories were generated by management, rather than pitched by Plaintiff.

17. In or around the fall of 2016, Mr. Jones demanded that Plaintiff work "split shifts" or else threatened to find someone else to replace Plaintiff. Split shifts are a demanding and undesirable on-air schedule that no other on-air talent was working on a permanent basis at the time. Plaintiff therefore refused Mr. Jones' demand to work split shifts.

18. In response, Mr. Jones sent Plaintiff an email and letter, both dated October 14, 2016, stating that Plaintiff had agreed to resign her employment and she would be "released" from her three year contract. Mr. Jones' email and letter were false. Plaintiff never agreed to resign her employment. It seemed that Mr. Jones was fabricating a paper trial to make it seem that Plaintiff was voluntarily resigning. However, after receiving the communication, Plaintiff advised Mr. Jones that she was not resigning.

19. Plaintiff's refusal to go along with the resignation ruse resulted in Mr. Jones removing Plaintiff from the more desirable morning shift and replacing her with someone much younger and less experienced, Candance Smith (approx. 24 years old).

20. The backdrop of Mr. Jones replacing Plaintiff with a much younger traffic reporter for the morning show was that NBC12 was trying to emulate its competitor, WTVR/CBS6, that had young weather and traffic reporters on its morning show. Not long after Mr. Jones replaced Plaintiff with the much younger Ms. Smith, Richmond BizSense reported that CBS6 surpassed

NBC12 in ratings for the morning show for the first time.

21. Thereafter, Plaintiff continued to work the afternoon shift and Mr. Jones continued to falsely nit-pick Plaintiff's performance and attempt to paper her employment file with write-ups.

22. In August 2017, Richmond Magazine published its annual "Best of Richmond" issue and Plaintiff was voted first place in the category of "Traffic reporter who gives the best routes." No one in station management congratulated Plaintiff or otherwise acknowledged her recognition.

23. On October 31, 2017, Plaintiff wrote a letter to the General Manager, Kym Grinnage, and Judy Gibson, Human Resources Director, stating that she believed Mr. Jones' nit-picking and write-ups were discriminatory against her because of her age and/or sex and that Mr. Jones was creating a hostile work environment.

24. Five weeks later, on December 6, 2017, Plaintiff was informed that after fifteen years of employment her contract would not be renewed when it expired in March 2018. Defendants retained the much younger and less experienced Ms. Smith as the traffic reporter.

25. Following the non-renewal of her contract, Plaintiff requested the opportunity to continue to work on the "RVA Today" promotional segments on a contract basis. On or about March 12, 2018, Plaintiff met with Mr. Jones and he confirmed that Plaintiff would continue to work on the "RVA Today" segments as an independent contractor. Plaintiff was scheduled to record at least two RVA Today segments in April 2018 as an independent contractor.

26. On March 16, 2018, Plaintiff's attorney sent a letter to Defendants, addressed to Kym Grinnage, asserting age and/or sex discrimination claims arising for the termination of Plaintiff's employment. Shortly after the letter was delivered to Mr. Grinnage, Plaintiff received a

call from a production employee, Michael Park, informing her that she would not longer be permitted to work on the RVA Today segments. Mr. Park informed Plaintiff that the decision was made by Mr. Grinnage.

## COUNT I
## ADEA
### Age Discrimination

27. At all times relevant hereto, Plaintiff was age 50-51.

28. Plaintiff was meeting Defendants' legitimate and objective expectations for the job and was regularly receiving internal and external praise and recognition for her work.

29. Defendants subjected Plaintiff to selective criticism, write-ups, and job assignments, and ultimately terminated her employment all because of her age.

30. Plaintiff's job duties were taken over by a much younger employee with less experience, Ms. Smith.

31. But for Plaintiff's age and sex she would not have been terminated. Alternatively, but for Plaintiff's age, regardless of her sex, she would not have been terminated.

32. Defendants' actions described herein were willful and were committed in knowing violation of Plaintiff's rights and/or were done with reckless disregard for same.

33. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer injury and damages including loss wages and benefits, consequential damages, and attorneys' fees and costs.

## COUNT II
## ADEA
### Retaliation

34. Plaintiff engaged in protected conduct and opposition when she reported

Defendants' discriminatory conduct, including but not limited to in her October 31, 2017 letter to the Defendants and her attorney's March 16, 2018 letter to Defendants.

35. In response, Defendants retaliated against Plaintiff first by non-renewing her contract several weeks after receiving her letter opposing the discriminatory conduct and then by rescinding the offer of independent contractor work after receiving the letter from her counsel. Defendants' actions were taken because of Plaintiff's protected conduct and opposition as described above.

36. Defendants' actions described herein were willful and were committed in knowing violation of Plaintiff's rights and/or were done with reckless disregard for same.

37. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer injury and damages including loss wages and benefits, consequential damages, and attorneys' fees and costs.

## COUNT III
## Title VII
## Sex Discrimination

38. At all times relevant hereto, Plaintiff was a female employee, age 50-51.

39. Plaintiff was meeting Defendants' legitimate and objective expectations for the job and was regularly receiving internal and external praise and recognition for her work.

40. Defendants subjected Plaintiff to selective criticism, write-ups, and job assignments, and ultimately terminated her employment all because she was an older female.

41. Plaintiff's job duties were taken over by a much younger female employee with less experience, Ms. Smith.

42. Plaintiff's sex and age were motivating factors of her termination. Alternatively, Plaintiff's sex, regardless of her age, was a motivating factor of her termination.

43. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer injury and damages including loss wages and benefits, mental anguish, pain, suffering, consequential damages, and attorneys' fees and costs.

### COUNT IV
### Title VII
### Retaliation

44. Plaintiff engaged in protected conduct and opposition when she reported Defendants' discriminatory conduct, including but not limited to in her October 31, 2017 letter to the Defendants and her attorney's March 16, 2018 letter to Defendants.

45. In response, Defendants retaliated against Plaintiff first by non-renewing her contract several weeks after receiving her letter opposing the discriminatory conduct and then by rescinding the offer of independent contractor work after receiving the letter from her counsel. Defendants' actions were taken because of Plaintiff's protected conduct and opposition as described above.

46. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer injury and damages including loss wages and benefits, mental anguish, pain, suffering, consequential damages, and attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tracy Lynn Grasley respectfully prays for judgment against Defendants, jointly and severally, and further asks that this Court enter an Order:

(a) Awarding Plaintiff back-pay and benefit value plus interest for Counts I-V;

(b) Awarding Plaintiff liquidated damages for Counts I and II;

(c) Awarding Plaintiff compensatory and punitive damages on Counts II - IV;

(e) Declaring the actions of Defendants to be willful and violative of Title VII and the ADEA and enter an injunction directing Defendants to rehire Plaintiff, or alternatively, award Plaintiff front pay in lieu thereof;

(f) Awarding Plaintiff reasonable attorneys' fees and costs; and

(g) Awarding such other and further legal and equitable relief as may be just and proper.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,
**Tracy Lynn Grasley**
Plaintiff


By:\_\_\_\_/s/_____
Craig Juraj Curwood (VSB No. 43975)
Curwood Law Firm
530 E. Main Street, Suite 710
Richmond, VA 23219
Telephone: (804) 788-0808
Fax: (804) 767-6777
Email: ccurwood@curwoodlaw.com

Harris D. Butler, III (VSB No. 26483)
Paul M. Falabella (VSB No. 81199)
BUTLER ROYALS, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: harris.butler@butlerroyals.com
paul.falabella@butlerroyals.com